EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN QUIÑONES MARTÍNEZ, acusado y apelante.

No. 4723.—*Sometido:* Marzo 29, 1932. *Resuelto:* Abril 8, 1932.

*Jasé Veray, Jr.,* abogado del apelante; *E. Díaz Viera, Fiscal Auxiliar,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El policía insular José Rivera denunció a Ramón Quiñones porque "en Aguadilla, P. R., . . . allí y entonces, ilegal, voluntaria y maliciosamente violó las disposiciones del artículo 1 de la ley que regula el uso de vehículos de motor por los caminos públicos de Puerto Rico, consistente en que por dicho camino público, guiaba el automóvil Chrysler No. P–1102, propiedad de Tomás Pellot, el cual es UN AUTOMÓVIL DE SERVICIO PÚBLICO, poseyendo solamente una placa y licencia de CONDUCTOR No. 37502, sabiendo que para guiar tales vehículos de servicio público, necesariamente tiene que poseer una placa o licencia de *chauffeur*."

La Corte de Distrito de Aguadilla, en apelación, declaró culpable al acusado y le impuso una multa de un dólar. No conforme Quiñones, recurrió para ante este Tribunal Supremo.

En su alegato sostiene que los hechos que se le imputan en la denuncia no constituyen delito público y que la corte erró al apreciar la prueba.

Conocemos la denuncia. La prueba de cargo consistió en la declaración del policía denunciante. En resumen dijo que en la noche del nueve de agosto el acusado Quiñones guiaba un automóvil que tenía tablilla de servicio público alrededor de la plaza de Aguadilla. A su lado iban sentadas dos personas. Nadie ocupaba el asiento de detrás. Que no puede asegurar que Quiñones cobrara a esas dos personas. Que Quiñones tenía placa de conductor, pero no de *chauffeur*. Que formuló otra denuncia contra Quiñones por conducir dos pasajeros, de la cual denuncia Quiñones salió bien. La prueba de descargo consistió en las declaraciones de José Beléndez y en la del acusado. En resumen dijeron que ellos y Miguel Acevedo, todos empleados de un banco, acostumbraban alquilar carros para pasear los domingos y que así lo hicieron en la noche del 9 de agosto en que guiaba Quiñones y fué denunciado por el policía.

El hecho último es, pues, el siguiente: un automóvil de servicio público alquilado para uso particular de tres per-

sonas y guiado por las calles de una ciudad por una de ellas que tenía licencia de conductor.

¿Constituye ese hecho una infracción a la Ley de Autoviles y puede por tanto perseguirse y castigarse como un delito público? Examinemos la ley en vigor para contestar debidamente la pregunta formulada.

Es la No. 75 de 1916 (p. 144) titulada Ley para reglamentar el uso de vehículos de motor en Puerto Rico y para otros fines, enmendada por la No. 55 de 1921 (p. 423), la No. 93 de 1925 (p. 757) y la No. 9 de 1926 (p. 23). Su sección 1, tal como quedó enmendada en 1921, dice:

"Sección 1.—Por la presente se enmienda el término 'Conductor' en el Artículo 1 de la 'Ley para reglamentar el uso de vehículos de motor en Puerto Rico, y para otros fines,' aprobada abril 13, 1916, de manera que se lea en la forma siguiente:

" 'Conductor' significará cualquier persona que no siendo un *chauffeur,* maneje un vehículo de motor que no sea de servicio público.

" 'Automóvil de servicio público.' Por 'automóvil de servicio público', para los efectos de esta Ley, se considerará todo vehículo de motor que mediante retribución o pago se dedique a la conducción de pasajeros, mercancías o materiales de cualquier clase, y dichos vehículos no podrán traficar sin pagar los derechos adicionales establecidos más adelante en esta Ley, para automóviles que actúen como porteadores públicos.''

El mismo caso que ahora se persigue surgió antes de dicha enmienda, cuando la definición de conductor era: "Conductor significará cualquier persona que, no siendo un *chauffeur,* maneje un vehículo de motor'' y fué resuelto por esta corte como sigue:

"El apelante sostiene que 'un conductor con licencia como tal necesita de una licencia de *chauffeur* para poder dedicarse a manejar y guiar un vehículo de motor dedicado al servicio público,' y que al no reconocerlo así erró la corte de distrito y debe revocarse la sentencia que dictara.

"Examinemos la Ley No. 75 de 1916 que es la que regula la materia. En su artículo 1, expresa que *chauffeur* significa 'toda persona a quien se pagare por manejar un vehículo de motor,' y *con-*

*ductor* 'cualquier persona que, no siendo un *chauffeur*, maneja un vehículo de motor.' Y de estas definiciones deduce el apelante que para que la persona que guía un automóvil esté autorizado para recibir dinero en pago del pasaje en un carro de servicio público, tiene necesariamente que poseer la licencia de *chauffeur*, sin que le baste la de conductor.

"Para resolver en justicia la cuestión planteada es necesario estudiar más a fondo la ley. Sólo pueden guiar vehículos de motor en Puerto Rico aquellas personas que posean licencias de *chauffeur* o de conductor. Esto es claro. ¿Cómo se obtienen esas licencias? Mediante una solicitud acompañada de certificación médica jurada, en la cual se hará constar claramente que dicha persona está capacitada física y mentalmente para manejar dicho vehículo; previo examen en el que el solicitante deberá probar sus conocimientos y habilidad prácticos, y previo también el pago de la suma de cinco pesos. (Ley No. 75, arts. 5 y 10.) Los requisitos personales y los derechos que deben satisfacerse al Tesoro Público son, pues, enteramente iguales para obtener una u otra licencia. Lo que la ley exige para que se maneje un vehículo de motor es que se demuestre la capacidad necesaria para ello y se pague la suma fijada, sin hacer distinción entre vehículos de servicio público o privado.

"¿Dónde se hace la distinción? En el artículo 10 de la misma Ley No. 75, de 1916. Al fijarse la tarifa de los derechos que deben satisfacerse se establece una clara distinción entre los automóviles de servicio privado por los cuales sólo es necesario pagar cincuenta centavos o un peso al año por caballo de fuerza, y los de servicio público por los que se está obligado a satisfacer veinte pesos anuales, en adición a los demás derechos prescritos, cuando el tráfico es dentro de un solo municipio, y treinta cuando abarca la isla entera.

"Siendo esto así, no es posible extender la idea del pago de que habla la ley al establecer el significado del término *chauffeur*, al que recibe el que guía un auto de manos de los pasajeros que conduce, sino que debe restringirse a sus propios límites, esto es, al sueldo o cantidad en globo o en proporción a otra que recibe una persona por el trabajo realizado por ella al guiar un vehículo de motor. Interpretada la ley de ese modo, no vemos qué obstáculo pueda existir para que el dueño de un auto le guíe por sí mismo y cobre el precio del pasaje, cuando ha probado su capacidad para manejarlo y, previo el pago de la cantidad fijada por el estatuto, ha obtenido la licencia necesaria sin restricción alguna, y además ha satisfecho la otra suma exigida por la ley para poderlo dedicar al servicio público." *Arenas v. Enright*, 26 D.P.R. 742, 744.

Los preceptos de la ley relativos a exámenes y pago de derechos no han variado substancialmente a virtud de las enmiendas aprobadas después de la decisión de esta corte en el caso que dejamos citado.

No podemos explicarnos cuál fuera el propósito que guiara al Legislador a enmendar la definición del término "conductor" en la forma en que se hizo. Hemos examinado la Ley en su totalidad y no encontramos el motivo. Hemos pensado en las responsabilidades en cuanto a daños y perjuicios ocasionados a otras personas a consecuencia del manejo negligente del vehículo y tampoco hemos podido advertirlo. Ni al *chauffeur* ni al conductor se les exige la prestación de fianza alguna para tales casos. Quizá el estado de la ley en Puerto Rico y de la jurisprudencia—artículos 1803 y 1804 del Código Civil, *Vélez v. Llavina,* 18 D.P.R. 656—fuera el motivo, aunque el artículo 17 de la primitiva ley de 1916 no ha sufrido alteración alguna.

Pero sea lo que fuere, nos encontramos que, de acuerdo con la ley vigente sobre la materia, al concedérsele al acusado licencia de "conductor" sólo quedó autorizado para manejar "un vehículo de motor que no sea de servicio público" y como el que manejaba lo era, la infracción es evidente. Las circunstancias concurrentes explican la pena mínima que impuso el tribunal sentenciador.

*Debe declararse sin lugar el recurso y confirmarse la sentencia recurrida.*

El Juez Asociado Señor Wolf no intervino.