Don Carmelo Zeno Molina, etc., et al., demandantes, re-
currentes y recurridos, *v.* Mario Vázquez Rosario, etc.,
et al., demandados, recurridos y recurrentes.

*Números:* R-76-220,      *Resueltos:* 30 de septiembre de 1977
          R-76-230

*Demetrio Fernández,* abogado de Carmelo Zeno Molina *et al.;* *Vivas & Martínez Texidor,* abogados de Mario Vázquez Rosario *et al.* y de Master Mix Company y Commercial Insurance Company of Newark, New Jersey.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Un joven soltero de 21 años de edad que vivía con su padre y tres medio hermanos, murió instantáneamente al ser impactado su auto por un vehículo conducido por un empleado de Master Mix Company. El padre, sus tres hermanos y una tía de crianza demandaron para resarcirse. Los demandados admitieron la negligencia.

La Administración de Compensación por Accidentes de Automóviles (ACAA) compensó en $10,000 al padre y en

$1,000 a cada uno de los tres hermanos por ser dependientes del occiso.

El Tribunal Superior, Sala de Arecibo, valoró la pérdida económica sufrida por el padre, Carmelo Zeno, en $51,194.62. Le concedió $450.00 por el valor del auto del joven, el cual fue pérdida total. También le concedió $10,000 por angustias mentales. A los hermanos María del Carmen, Nydia y Luis Alberto de 14, 11 y 7 años de edad respectivamente les concedió $5,000 a cada uno y a Felícita Zeno de Rivas, la tía de crianza, $10,000.

Mediante sentencia enmendada de 28 de abril de 1976 el tribunal de instancia eliminó la partida que por daños morales le había concedido a Carmelo Zeno ya que a tenor con la Ley de Protección Social por Accidentes de Automóviles, Sec. 8 (9 L.P.R.A. sec. 2058) procedía restar de los daños morales la cantidad de $10,000 que la Administración de Compensación por Accidentes de Automóviles (ACAA) le había compensado. Por la misma razón dedujo $1,000 a la compensación de cada uno de los hermanos.

Ambas partes recurrieron. Consolidamos los recursos. La parte demandada cuestiona que el tribunal de instancia utilizara como base para determinar la compensación por pérdida económica la expectativa de vida de la víctima y no la de su padre. También alega que son exageradas las cuantías concedidas por daños morales a los hermanos y tía de crianza del fenecido.

Los demandantes levantaron como error el que el tribunal sentenciador dedujera de la partida de daños morales concedida al padre y a los hermanos la compensación otorgada por la ACAA. Encuentran asimismo error en la evaluación que el tribunal hiciera de los daños sufridos por el padre y los hermanos.

I

Está consignado en nuestros dictámenes que la causa de acción que autoriza el Art. 1802 del Código Civil no sólo

cubre los sufrimientos sino el daño pecuniario efectivo causado. *González* v. *San Juan L. & T. Co.*, 17 D.P.R. 124–130 (1911), revocado en otros extremos en *De Jesús* v. *De Jesús*, 37 D.P.R. 151 (1927); *Maldonado* v. *The Porto Rico Drug Co.*, 31 D.P.R. 747–766 (1923); *Orta* v. *P.R. Railway L. & P. Co.*, 36 D.P.R. 743, 759 (1927); *Travieso* v. *Del Toro y Travieso, Int.*, 74 D.P.R. 1009 (1953). Véase además Sentencia del Tribunal Supremo de España de 20 de enero de 1970.

■ El tribunal de instancia para determinar la cuantía de la pérdida económica sufrida por el padre con motivo de la muerte de su hijo solamente tomó como base la expectativa de vida del hijo. Evidentemente, aunque sin citarlo, el juez sentenciador se fundó en *Vda. de Delgado* v. *Boston Ins. Co.*, 101 D.P.R. 598 (1973), donde resolvimos que una persona que muere víctima del acto u omisión negligente de otra transmite a sus herederos la causa de acción que no ejercitó para recobrar indemnización adecuada al sufrimiento físico y moral que precedió a su deceso. Así, erróneamente consideró como un bien patrimonial transmisible por la muerte el lucro cesante correspondiente a la víctima. Pero la situación que los hechos de este caso presenta es distinta a la que consideramos en el caso que acabamos de citar. En el presente la víctima murió instantáneamente y como expresó el Tribunal Supremo de España en Sentencia de 29 de diciembre de 1930 "el derecho a la indemnización pretendida por los recurridos no provenía de su difunto padre, sino que les pertenecía por su carácter de mujer e hijos del atropellado, ya que éste, al fallecer instantáneamente . . . por consecuencia de haber sido atropellado por el auto-camión, no llegó a poseer ni por un instante el derecho a ser indemnizado, que se supone transmitió a sus descendientes, sino que con ese acto nació para éstos la acción de indemnización." Ver además las Sentencias del 8 de enero de 1946 y 17 de febrero de 1956 del Tribunal Supremo de España.

En el caso de *Travieso* antes citado, consignamos que

"[b]ajo el derecho francés, aquellas personas a quienes el fallecimiento de la víctima produzca un perjuicio `moral o pecuniario personal, pueden pedir su reparación, sean o no herederas de la víctima, y la acción que les corresponde es independiente de la que le correspondía a la víctima y el perjuicio debe apreciarse exclusivamente en la persona del reclamante y no en la persona de la víctima. Planiol-Ripert, *Derecho Civil Francés*, Vol. 6, pág. 897, sección 658; 6 Tulane L. Rev. 216." Igual enfoque aparece en el derecho consuetudinario. Rheinstein, *The Law of Decedents' Estates*, pág. 629 (ed. 1955); Nota 25 Calif. L. Rev. 103 (1936); Puig Brutau, *Fundamentos de Derecho Civil*, Tomo V, pág. 59 (2da. ed. 1975).

█ Vemos pues que la acción no es patrimonial hereditaria, sino una en resarcimiento de daños, por lo que la cuantía de los mismos ha de determinarse tomando en cuenta la productividad y expectativa de vida de la víctima y del beneficiario que le sobrevive, limitando la indemnización que a éste corresponde en proporción al tiempo de su probable supervivencia.

█ Establecido que los daños pecuniarios sufridos por el padre de la víctima se evalúan por el daño efectivo causado, debe tenerse presente lo expresado en *Travieso*, supra, al efecto de que "[a]un si el padre no recibía alimentos en forma real y efectiva al tiempo de la muerte de su hijo, él pierde los beneficios prospectivos y potenciales inherentes a la relación de padre e hijo. La relación en sí daba lugar a una esperanza razonable de alimentos y beneficios futuros. Tal como se indica en Colombo, *Culpa Aquiliana*, pág. 73, nota 1047:

'La vida humana es un bien jurídico, un valor económico como cualquier otro, más digno de protección que ninguno, un capital social destinado a ser, en el futuro, fuente de beneficios, sobre todo en los hogares modestos, y los padres, al perder a sus hijos sufren la pérdida de los gastos y sacrificios, traducibles

pecuniariamente, que han realizado para sostener la vida, a la vez que la fundada esperanza de una protección o un amparo para la vejez.' "

■ Y al valorar los daños debemos seguir la norma consignada en *Travieso* cuando expresamos: "Hemos hablado de valores económicos en cuanto a la pérdida de la vida de un hijo. Pero no ignoramos que la vida de un hijo, desde el punto de vista del afecto y del cariño, tiene un valor inconmensurable que no se presta a valoración objetiva. El juzgador debe considerar todos esos elementos para que aquilate los daños y perjuicios, incluyendo sufrimientos mentales causados al padre." *Travieso*, supra, pág. 1028.

Siguiendo esta pauta consideramos que una indemnización total de $40,000 al padre por los daños sufridos es razonable. Los daños concedidos a los otros demandantes son adecuados.

## II

■ Los demandantes atacan la actuación del tribunal sentenciador al eliminar de las partidas concedidas por daños morales al padre y hermanos de la víctima una cantidad igual, a tenor con la Sec. 8(3)(d) de la Ley de Protección Social por Accidentes de Automóviles, 9 L.P.R.A. sec. 2058(3)(d). Estos apuntamientos de los demandantes son inmeritorios. Establece dicha sección que:

"
.    .    .    .    .    .    .    .    .

(3) Toda persona a quien un tribunal declare en una acción civil relacionada con la posesión, mantenimiento, u operación de un vehículo de motor culpable de haber causado por negligencia lesiones por las cuales la víctima tenga derecho a recibir beneficios o servicios médico-quirúrgicos y de hospitalización bajo este Capítulo, tendrá derecho a una reducción en la sentencia impuesta por el tribunal hasta la cantidad indicada en esta sección.

.    .    .    .    .    .    .    .    .

(d) La indemnización que un tribunal otorgue a los sobrevivientes de la víctima por concepto de los daños morales sufri-

dos por éstos por razón de la muerte de dicha víctima, se reducirá por una suma igual al importe de los beneficios que la víctima y sus beneficiarios hayan recibido de la Administración."

■ Por medio de este inciso se quiso eliminar de lo que el tribunal concediese por daños morales a los sobrevivientes de una víctima, una cantidad igual a los beneficios que la víctima o sus beneficiarios hayan recibido de la ACAA. [1] Recuérdese que aun las víctimas "indirectas" sufren la deducción cuando por disposición especial del estatuto son acreedores a beneficios de la ACAA. *Cf. Coira Luquis* v. *De Jesús Rosas*, 103 D.P.R. 345 (1975).

■ En nuestra interpretación de los incisos (b) y (c) [2] de la misma sección, en *Morales* v. *Lizarribar*, 100 D.P.R. 717, 724 (1972), a pesar de que la Ley de la A.C.A.A. no contemplaba compensación por sufrimientos físicos y mentales, resolvimos que la deducción que la ley establecía era una automática que beneficiaba al causante del accidente. Véase también *A.C.A.A.* v. *Yantín*, 103 D.P.R. 59, 63, 64 (1974). El inciso (d) es claro en su redacción y sirve el mismo fin que los incisos (b) y (c) de la Sec. 8. Aunque la Ley de Protección Social por Accidentes de Automóviles no concede daños morales se debe restar de lo concedido por los tribunales por este concepto una suma igual a la que la Ad-

---

[1] Dicho inciso fue enmendado el 30 de octubre de 1975 estableciendo que:

"La indemnización que un tribunal otorgue a los sobrevivientes de la víctima aun cuando sea solo por concepto de los daños morales sufridos por éstos por razón de la muerte de dicha víctima, se reducirá por una suma igual al importe de los beneficios que la víctima y sus beneficiarios hayan recibido de la Administración."

[2] Disponen así dichos incisos:

"(b) La reducción aplicable a daños por sufrimientos físicos y mentales será de $1,000.

"(c) La reducción aplicable a daños y pérdidas por causas que no sean sufrimientos físicos y mentales será la suma de $2,000 o el importe de los beneficios totales pagados por la Administración, si dicho importe fuera mayor de $2,000."

ministración concedió a los beneficiarios de la víctima. Actuó correctamente el tribunal inferior al así deducirlos.

*La sentencia modificada de acuerdo con los términos de esta opinión, será confirmada.*

El Juez Asociado Señor Rigau no intervino.