ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **JAIME L. NIEVES VARGAS**<br><br>**Parte Peticionaria**<br><br>ANGÉLICA M. VÉLEZ LUCCA<br><br>Parte Recurrida<br><br>EX PARTE | KLCE202301419 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Familia de Bayamón<br><br>Civil Núm.:<br>D DI2013-1790<br><br>Sobre:<br>Divorcio |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez, el Juez Rodríguez Flores y el Juez Monge Gómez

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece el señor Jaime L. Nieves Vargas (Sr. Nieves Vargas o peticionario) mediante recurso instado el 14 de diciembre de 2023. Solicita que revoquemos la *Resolución* emitida el 15 de noviembre de 2023, y notificada el 16 de noviembre de 2023, por el Tribunal de Primera Instancia (TPI), Sala de Relaciones de Familia y Menores de Bayamón, en un procedimiento de ejecución de sentencia.

Evaluada la solicitud del peticionario, la oposición de la parte recurrida, Sra. Angélica Vélez Lucca, así como la transcripción de la prueba oral y los documentos que obran en autos, y por los fundamentos que se exponen a continuación, se expide el auto de *certiorari* y se revoca la resolución recurrida.

**I.**

La controversia ante nuestra consideración se suscitó en la etapa de ejecución de sentencia del caso. No obstante, para una mejor comprensión del asunto, resumimos el trámite procesal pertinente.

Conforme surge de los autos, el Sr. Nieves Vargas y la Sra. Angélica Vélez Lucca (Sra. Vélez Lucca o recurrida) se divorciaron mediante sentencia emitida el 4 de noviembre de 2013.[1] En lo pertinente, y como parte de los acuerdos adoptados por el tribunal, el Sr. Nieves Vargas reconoció la participación de la Sra. Vélez Lucca sobre las mejoras realizadas a la propiedad privativa de éste, valoradas en $25,000.00. Las partes estipularon que el pago del crédito de $25,000.00 a favor de la Sra. Vélez Lucca se realizaría en un término máximo de ocho (8) años, contados a partir de la fecha del divorcio. Dicha residencia constituiría el domicilio de los dos hijos procreados durante el matrimonio y la Sra. Vélez Lucca, únicamente como hogar seguro de los menores. Las partes también pactaron que el Sr. Nieves Vargas pagaría una pensión alimentaria de $2,000.00 mensuales y la cubierta del plan médico a favor de los dos menores.[2]

Respecto a los bienes gananciales, el Sr. Nieves Vargas retuvo la titularidad de un camión de arrastre, año 2001, tablilla RP-10932, y una guagua Ford 150, año 1999, tablilla 862-150. Por su parte, la Sra. Vélez Lucca se quedó con los bienes muebles del hogar y retuvo la titularidad de dos vehículos marca Toyota; una Highlander, año 2002 (tablilla FHA-056), y un Yaris, año 2011 (tablilla HPO-951). La recurrida asumió el pago de la deuda del financiamiento del vehículo Yaris que, en ese entonces, reflejaba un balance de $14,599.13. También, ésta se comprometió a pagar $275.00 mensuales de renta por el espacio en el que ubica el *trailer* que preservó.[3]

Posteriormente, y ante el hecho de que el Sr. Nieves Vargas tenía la custodia y cubría todas las necesidades de sus dos hijos, el 5 de diciembre de 2016, el TPI dictó una *Resolución* mediante la cual

---

[1] Conforme surge del sistema de Consulta de Casos del Poder Judicial, la sentencia de divorcio fue notificada el 15 de noviembre de 2013

[2] Al momento de la sentencia de divorcio, los menores tenían 16 y 14 años, respectivamente.

[3] Apéndice del recurso, págs. 7-10.

relevó al peticionario del pago de la pensión alimentaria previamente pactada por las partes. El dictamen especificó que los gastos extraordinarios de los menores que pudiesen surgir se cubrirían en un 50% por cada progenitor según su ingreso.[4]

Así las cosas, en octubre de 2022, la Sra. Vélez Lucca presentó *Moción informativa urgente sobre incumplimiento del copeticionario con la sentencia del 15 de noviembre de 2013 y en solicitud de ejecución de sentencia.* En dicha moción, la recurrida indicó que el Sr. Nieves Vargas solamente le había pagado $5,000.00 de los $25,000 correspondientes a las mejoras realizadas a la propiedad privativa y que, a pesar de los múltiples requerimientos extrajudiciales, el término máximo estipulado para el pago total de la deuda venció sin que ésta hubiera sido satisfecha. En vista de lo anterior, la Sra. Vélez Lucca solicitó al foro de instancia que ordenara el cumplimiento con la sentencia y/o que dictara un mandamiento con el fin de embargar bienes del Sr. Nieves Vargas para compensar el balance adeudado de $20,000.00, más $2,000.00 por concepto de costas y gastos, $1,500.00 por concepto de honorarios de abogado y aproximadamente la suma de $9,600.00 por concepto de gastos legales.

El 30 de noviembre de 2022, notificada el 8 de diciembre de 2022, el TPI declaró con lugar la solicitud de la Sra. Vélez Lucca y emitió la orden de ejecución de sentencia.[5] El Sr. Nieves Vargas presentó una solicitud de reconsideración que fue denegada por el TPI mediante una orden emitida el 13 de diciembre de 2022.

Entonces, el 15 de diciembre de 2022, el Sr. Nieves Vargas presentó una *Moción solicitando ejecución de sentencia de acuerdos de división de bienes gananciales basado en la Regla 51 de*

---

[4] *Íd.*, pág. 11. Conforme surge del sistema de Consulta de Casos del Poder Judicial, la resolución fue notificada el 16 de diciembre de 2016.
[5] *Íd.,* págs. 23-25.

*Procedimiento Civil.* En ésta, reclamó haber satisfecho en exceso el balance de $20,000.00 reclamado por la Sra. Vélez Lucca y pidió un crédito por los gastos extraordinarios de los hijos que ésta no pagó. El Sr. Nieves Vargas solicitó la celebración de una vista evidenciaria para dilucidar el reclamo de crédito.

El 19 de diciembre de 2022, notificada el 21 de diciembre de 2022, el TPI dictó una orden mediante la cual declaró *no ha lugar* la moción de ejecución de sentencia incoada por el Sr. Nieves Vargas. Allí advirtió que "no permitiría un proceso de cobro de dinero, daños y perjuicios dentro de la ejecución de la sentencia de divorcio".[6]

El 13 de enero de 2023, el Sr. Nieves Vargas presentó un recurso ante este foro apelativo intermedio, cuyo alfanumérico asignado fue KLCE202300033. El 28 de marzo de 2023, este panel expidió el auto de *certiorari* y, en lo pertinente, resolvió que:

> Tiene razón el peticionario en lo que respecta al primer señalamiento. La solicitud de ejecución de sentencia no acredita de modo fehaciente las cuantías reclamadas por concepto de costas, gastos, honorarios de abogado e intereses. Ante ese escenario, es necesario celebrar una vista evidenciaria para establecer, con base en la prueba presentada, la cantidad que realmente adeuda el peticionario.[7]

Por lo anterior, este Tribunal de Apelaciones ordenó la paralización del trámite de ejecución de sentencia instado por la Sra. Vélez Lucca.

En cuanto a la solicitud de crédito, este foro apelativo intermedio concluyó que:

> Ahora bien, no abusó de su discreción el TPI al negarse a atender el reclamo de nivelación del peticionario en el procedimiento de ejecución de sentencia. De este modo, se evita complicar innecesariamente el trámite post sentencia ante nos y se brinda a las partes la oportunidad de litigar cabalmente sus reclamaciones disponiendo de los mecanismos que les provee un pleito independiente.[8]

---

[6] Véase, *Sentencia* emitida el 28 de marzo de 2023 por el Tribunal de Apelaciones en el caso *Jaime L. Nieves Vargas, Angélica M. Vélez Lucca, Ex parte,* KLCE202300033. Apéndice del recurso, págs. 26-42, a la pág. 28.
[7] *Íd.,* pág. 41.
[8] *Íd.,* pág. 41.

Finalmente, el foro apelativo intermedio devolvió el caso al TPI para la celebración de la vista evidenciaria ordenada.

El TPI celebró la vista el 10 de noviembre de 2023. En dicha vista, el tribunal indicó que atendería la defensa de sentencia satisfecha presentada por el Sr. Nieves Vargas.[9]

Establecido lo anterior, el desfile de prueba inició con el testimonio de la Sra. Vélez Lucca. Ésta testificó que, un año después del divorcio, abandonó la propiedad del Sr. Nieves Vargas y los menores se quedaron residiendo en dicha vivienda con el peticionario.[10] Por otra parte, admitió que el Sr. Nieves Vargas le pagó $5,000.00 de los $25,000.00 convenidos por concepto de las mejoras realizadas al inmueble privativo.[11] También, indicó que, como parte de los acuerdos del divorcio, ella se quedó y asumió la deuda de un vehículo de motor Yaris, cuyo titular registral es el Sr. Nieves Vargas. No obstante, afirmó que dejó de pagar las mensualidades del préstamo del auto porque no tenía trabajo ni dinero, razón por la que optó dejar el auto en la propiedad del Sr. Nieves Vargas.[12] En cuanto a los gastos extraordinarios de los menores, afirmó que el Sr. Nieves Vargas nunca le hizo un requerimiento verbal o escrito de pago.[13] Tampoco le exigió el reembolso de los pagos que él realizó al préstamo del Yaris.[14]

En el contrainterrogatorio, la Sra. Vélez Lucca aceptó que cuando dejó el vehículo Yaris en la vivienda del peticionario, de allí se llevó el vehículo Toyota Highlander objeto del acuerdo de divorcio, el cual estaba registrado a su nombre.[15]

Luego se presentó el testimonio del Sr. Nieves Vargas. Éste relató que, en más de una ocasión, le requirió a la Sra. Vélez Lucca

---

[9] Transcripción de la prueba oral, págs. 5-6.
[10] *Íd.,* pág. 10.
[11] *Íd.,* pág. 13.
[12] *Íd.,* págs. 13-14.
[13] *Íd.,* págs. 19-20, 37.
[14] *Íd.,* pág. 37.
[15] *Íd.,* pág. 23.

el pago de los gastos extraordinarios de los menores, pero ésta le indicaba que no tenía trabajo ni generaba ingresos, razón por la cual el peticionario dejó de exigirle los pagos.[16] El Sr. Nieves Vargas detalló y exigió el crédito por los pagos que efectuó al préstamo del Yaris y al proveedor del espacio del *trailer,* los cuales, según la sentencia de divorcio, correspondían a la Sra. Vélez Lucca y ésta nunca efectuó. Relacionado con este asunto, la representación legal de la Sra. Vélez Lucca objetó la admisión en evidencia de los recibos (*slipts*) y el historial de los cheques emitidos por el Sr. Nieves Vargas para el pago de las referidas obligaciones, con fechas del 2013 al 2016.[17] El total de pagos efectuados por éste para el préstamo del Yaris ascendió a $7,591.00 y los correspondientes al *trailer* a $4,400.00.[18] Así su vez, el Sr. Nieves Vargas afirmó haber pagado a la Sra. Vélez Lucca $5,000.00 de los $25,000.00 adeudados por concepto de mejoras hechas a la residencia privativa.[19]

El Sr. Nieves Vargas indicó que también pagó los gastos universitarios y el plan médico de sus hijos, y reclamó crédito por el pago de esos gastos extraordinarios.[20] Sin embargo, el Sr. Nieves Vargas no presentó evidencia de pago de dichos gastos.

En el contrainterrogatorio, el Sr. Nieves Vargas admitió no haber exigido a la Sra. Vélez Lucca el reembolso de los gastos extraordinarios de sus hijos, así como tampoco de los pagos realizados al préstamo del Yaris y al proveedor del espacio del *trailer*.[21] En ánimo de establecer la improcedencia de este reclamo, la representación legal de la Sra. Vélez Lucca aludió al fragmento de la sentencia de divorcio en la que éste acordó proveer plan médico a sus hijos. Igualmente, hizo referencia a la resolución del 5 de

---

[16] *Íd.,* págs. 38-39.
[17] *Íd.,* págs. 47-51.
[18] *Íd.,* pág. 49.
[19] *Íd.,* págs. 61-62.
[20] *Íd.,* págs. 52-55, 63.
[21] *Íd.,* págs. 73-76.

diciembre de 2016, en la que se relevó al Sr. Nieves Vargas del pago de la pensión alimentaria por razón de que éste tenía a los menores bajo su custodia y cubría todas sus necesidades.[22]

Hay que señalar que en la referida vista no se presentó prueba, ni se discutió lo ordenado por el Tribunal de Apelaciones referente a las cuantías por concepto de costas, gastos, honorarios de abogado e intereses.

El TPI dictó *Resolución* el 15 de noviembre de 2023. En su pronunciamiento, consignó las siguientes determinaciones de hechos:

1. Las partes disolvieron su matrimonio por mutuo consentimiento. Se emitió Sentencia de conformidad el 4 de noviembre de 2013.

2. En dicha sentencia se establece en su inciso C 1 que el Sr. Nieves pagará la cantidad de $2,000.00 dólares de pensión en beneficio de sus dos hijos menores de edad.

3. En su inciso C 2 que el peticionario proveerá cubierta de plan médico para los menores.

4. En cuanto a los bienes gananciales el inciso 5 y 6, indica: Jaime L. Nieves Vargas reconoce [que] su participación sobre las mejoras realizadas a dicha propiedad [está valorada] en $25,000.00 dólares. El pago del crédito de $25,000.00 dólares a favor de la copeticionaria Angélica M. Vélez Lucca, se realizará al momento del saldo del préstamo de la Cooperativa de Ahorro y Crédito de Vega Alta. El término máximo para el pago es 8 años a partir de la fecha del divorcio.

5. El término máximo establecido en Sentencia de Divorcio para el pago de lo acordado a la Sra. Vélez, venció el 4 de noviembre de 2021.

6. Ambas partes aceptaron que se pagó $5,000.00 dólares de dicha deuda.

7. El Sr. Nieves no reclamó a la Sra. Vélez los alegados gastos extraordinarios de sus hijos en ningún momento.

8. El Sr. Nieves nunca reclamó el pago del vehículo ni crédito por los pagos realizados por este a la institución financiera, a la Sra. Vélez.

9. El Sr. Nieves nunca reclamó el pago o reembolso de pago de ninguna obligación o deuda posterior al divorcio entre las partes.[23]

---

[22] *Íd.*, págs. 70-72.
[23] Apéndice del recurso, págs. 1-6, a las págs. 3-4.

El TPI explicó que la sentencia de divorcio por consentimiento mutuo constituía un contrato de transacción judicial entre las partes que tiene efecto de cosa juzgada. Por lo cual, para que procediera un cambio en lo estipulado, el promovente de la solicitud tenía que probar que las circunstancias al momento de efectuarse la estipulación habían cambiado. Entonces, el TPI concluyó que la solicitud de ejecución presentada por el Sr. Nieves Vargas carecía de fundamentos que justificaran dejar sin efecto la estipulación mediante la cual éste había consentido a pagar a la Sra. Vélez Lucca la cantidad de $25,000.00 por las mejoras realizadas en el inmueble privativo. A tales efectos, expresó el tribunal que:

> Los acuerdos alcanzados por las partes fueron libres, voluntarios y bajo juramento. Más aún, conforme dispone la ley y la jurisprudencia aplicable, fueron revisados, confirmados y aprobados por este Tribunal. Al Sr. Nieves consentir a pagar bajo juramento a la Sra. Vélez, $25,000.00 dólares y este quedarse con los demás activos de la Sociedad Legal de Gananciales a cambio de pagar en ocho años, nos reiteramos es un acuerdo confirmado ante el Tribunal, por lo que no es producto de la irreflexión, ni mucho menos de la coacción.
>
> Entendemos que la ley y la jurisprudencia son claras, sostenemos que, ante las decisiones tomadas libre y voluntariamente y recogidas mediante Sentencia, no estableciéndose por el demandado en la vista celebrada evidencia contraria a la vigencia de la obligación contraída voluntariamente y bajo juramento en el 2013 ante este Tribunal, las mismas prevalecen y deben ser satisfechas.[24]

En virtud de lo anterior, el TPI ordenó al Sr. Nieves Vargas a pagar a La Sra. Vélez Lucca la cantidad de $20,000.00, más las costas, gastos y honorarios de abogado reclamados por ésta.[25]

Inconforme, el 14 de diciembre de 2023, el Sr. Nieves Vargas instó el presente recurso de *certiorari* en el que apuntó los siguientes señalamientos de error:

> Primer Error: Erró el TPI al admitir evidencia no refutada sobre el saldo de la deuda reclamada por la

---

[24] *Íd.,* pág. 6.
[25] *Íd.*

parte recurrida y no reducirla, compensarla, y/o acreditarla al balance de $20,000.00 adeudado por el peticionario.

Segundo Error: Erró el TPI al fallar en aplicar la Regla 110 de las Reglas de Evidencia.

Tercer Error: Erró el TPI al concluir, sin evidencia o alegación de prescripción, que el reembolso reclamado por la parte peticionaria no podía ser reclamado alegadamente por no haber sido reclamada y notificada a la parte recurrida a pesar de la notificación y desglose de pagos impuestos a la parte recurrida mediante la sentencia de divorcio y resolución del 2016 notificados mediante la moción de la parte peticionaria bajo la Regla 51 de Procedimiento Civil el 15 de diciembre de 2022.

Cuarto Error: Erró el TPI al interpretar que el caso de *S[u]cn. Pacheco v. Eastern Med. Assoc., Inc.*, 135 DPR 701, 709 (1994); *Hernández v. Zapater,* 82 DPR 777 (1961) aplica en el presente caso al interpretar que la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. [V], R. 49.2, no aplica a los casos de divorcio como al caso de autos cuando la reclamación de la parte peticionaria no buscaba anular o modificar dicha Sentencia de divorcio. La parte peticionaria solamente solicitó ser relevado del pago reclamado por la parte recurrida ya que la obligación impuesta mediante Sentencia había sido satisfecha.

Quinto Error: Que el TPI erróneamente interpretó que la Resolución de diciembre del 2016 establecía que el peticionario se comprometió en cubrir las necesidades de los menores, cuando realmente el TPI solamente puntualizó como un hecho que al momento de solicitar la custodia de los menores, el peticionario ya cubría las necesidades de sus hijos.

Sexto Error: Erró el TPI al no aplicar la ley y la jurisprudencia aplicable a los hechos en este caso, especialmente lo resuelto en el caso de *Toro Sotomayor v. Colón,* 2009 TSPR 134, en el cual el Honorable Tribunal Supremo reconoció el derecho de ser reembolsado dentro del mismo pleito de alimentos. El tribunal claramente determinó que "el progenitor que retuvo la patria potestad y custodia de los hijos no puede reclamar del otro cónyuge el pago de las pensiones alimenticias atrasadas debidas a los hijos cuando éstos ya son mayores de edad. No obstante, **éste puede reclamar en el mismo pleito de alimentos – donde están todas las partes afectadas – la existencia de una deuda por parte del otro cónyuge para con su persona, por los pagos que tuvo que hacer ante el incumplimiento de aquel con su obligación alimenticia"**.

Séptimo Error: Erró el TPI al no aplicar las normas interpretativas de la Regla 49.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. [V], R. 49.2, las cuales [son ] de aplicación al presente caso, especialmente en

relación a las partes "(a) ...(e) la Sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la Sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor", y/o "(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una Sentencia".

Octavo Error: Erró el TPI al no aplicar la directriz mencionada en el caso de *López García v. López García,* 2018 TSPR 057, donde nuestro Honorable Tribunal Supremo claramente indicó que el carácter discrecional de la decisión de relevar a una parte de los efectos de una Sentencia **no aplica** cuando la parte peticionaria reclama haber satisfecho la Sentencia.

Noveno Error: Erró el TPI al no aplicar la directriz establecida en el caso de *Toro Sotomayor v. Colón,* supra, en el cual el Honorable Tribunal Supremo reconoció el derecho de ser compensado. El Código Civil dispone que la compensación tendrá lugar cuando dos personas, **por derecho propio, sean recíprocamente acreedores y deudoras la una de la otra**. Ese Honorable Tribunal Supremo continúa indicando que "para que ocurra la compensación tienen que estar presentes **todos los requisitos dispuestos en el Código Civil**. M. Albaladejo, *Íd.,* pág. 311-314. A tales efectos, el Código Civil dispone en su artículo 1150 que para que proceda la compensación es preciso: (1) que cada un[a] de las partes lo esté principalmente, y (...) sea a la vez acreedor principal del otro; (2) que ambas deudas consistan en una cantidad de dinero, siendo fungibles las cosas debidas, sean de la misma especie y también de la misma calidad, si ésta se hubiese designado; (3) que las dos deudas estén vencidas; (4) que sean líquidas y exigibles; y (5) que sobre ninguna de ellas haya retención o contienda promovida por terceras personas y notificada oportunamente al deudor. 31 LPRA sec. 3222. (Énfasis nuestro)".

Décimo Error: Erró el TPI al no aplicar el Artículo 1112 del anterior Código Civil interpretado en el caso de *Toro Sotomayor v. Colón,* [que] reconoció que "de una acción personal que puede ser ejercida en el término de 15 años, a partir del momento en que éste pagó en exceso de lo que le correspondía. Ello es así dado que, en esas circunstancias, es de aplicación la figura del pago por tercero del Artículo 1112 del Código Civil, supra".

Undécimo Error: Erró el TPI al imponer costas, gastos y honorarios de abogado cuando la parte recurrida no los solicitó basado en la Regla 44.1 de las Reglas de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. [V], R. 44.1.

(Énfasis original).

En síntesis, el peticionario plantea que el foro primario erró al

negarse a atender su reclamo de crédito en el procedimiento de

ejecución de sentencia y al imponerle el pago de costas, gastos y honorarios de abogado sin que la parte recurrida hubiera cumplido con la Regla 44.1 de Procedimiento Civil.

A solicitud del Sr. Nieves Vargas, autorizamos la presentación de la transcripción de la prueba oral. Dicha transcripción se presentó el 17 de mayo de 2024. Posteriormente, el 15 de julio de 2024, la Sra. Vélez Lucca presentó su escrito en oposición.

Con el beneficio de la comparecencia de las partes, así como de la transcripción de la prueba oral desfilada ante el foro primario, resolvemos.

**II.**

**-A-**

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones interlocutorias realizadas por un foro inferior. La expedición del auto descansa en la sana discreción del tribunal.[26]

Para determinar si procede la expedición de un recurso de *certiorari* en el que se recurre de una determinación post sentencia, debemos atender la solicitud a la luz de los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones[27]. Por tanto, al momento de valorar la actuación del foro de primera instancia, examinaremos lo siguiente:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[26] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[27] 4 LPRA Ap. XXII-B, R. 40.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ello impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[28] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado.

Por consiguiente, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[29]

**-B-**

El mandato es una figura enmarcada dentro de los procesos apelativos judiciales. Este se ha definido como el medio que posee un tribunal en alzada para comunicarle a un foro recurrido qué determinación ha tomado sobre la determinación objeto de revisión y ordenarle actuar en conformidad con la misma.[30] El propósito principal del mandato es lograr que el foro inferior actúe de forma

---

[28] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[29] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). Véase, además, *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[30] *Colón y otros v. Frito Lays*, 186 DPR 135, 151 (2012).

consistente con los pronunciamientos del tribunal de mayor jerarquía.[31]

Un tribunal de rango inferior no tiene discreción para ignorar ni alterar un mandato. Esta es la llamada "regla del mandato".[32] No obstante, si bien es cierto que el tribunal inferior le debe obediencia y fiel cumplimiento al mandato, el tribunal inferior retiene su discreción para atender asuntos que no fueron expresa o implícitamente adjudicados por el tribunal que emitió la orden de mandato.[33] Sin embargo, esto no constituye "un cheque en blanco para que los tribunales inferiores actúen fuera de la orden dictada".[34]

Una vez recibido el mandato, lo resuelto por el tribunal apelativo constituye la ley del caso y el tribunal inferior debe circunscribirse a cumplir con lo ordenado por el foro de mayor jerarquía[35]

Las determinaciones judiciales que constituyen la ley del caso incluyen todas aquellas cuestiones finales consideradas y decididas por el tribunal. Esas determinaciones como regla general obligan tanto al tribunal de instancia como al que las dictó, si el caso vuelve ante su consideración.[36] La doctrina solo puede invocarse cuando exista una decisión final de la controversia en sus méritos.[37]

Ahora bien, el Tribunal Supremo ha aclarado que esta doctrina no es n mandato inflexible, sino que recoge la costumbre deseable de quelas controversias adjudicadas por un tribunal sean respetadas. Así pues, a fines de velar por el trámite ordenado y pronto de los litigios, así como por la estabilidad y certeza del

---

[31] *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 301 (2012).
[32] *Pueblo v. Serrano Chang*, 201 DPR 643, 651 (2018).
[33] *Mejías et al. v. Carrasquillo et al.*, *supra*, pág. 302.
[34] *Íd.*, pág. 303.
[35] *Colón Otero v. Frito Lays*, 186 DPR 135, 154 (2012).
[36] *Cacho Pérez v. Hatton Gotay y otros,* 195 DPR 1, 9 (2016)*; Félix v. Las Haciendas,* 165 DPR 832, 843 (2005).
[37] *Íd.*

derecho, un foro inferior, como una cuestión de sana práctica y no como regla inviolable, debe resistirse a alterar sus pronunciamientos dentro de un mismo caso, excepto cuando se convenza de que los mismos son erróneos.[38] De este modo, las partes en un litigio pueden, en lo posible, conducir su proceder en el pleito sobre unas directrices judiciales confiables y certeras.[39]

### III.

Luego de dar lectura a los asuntos planteados y a la resolución post sentencia recurrida, a la luz de los criterios expuestos en la Regla 40 de nuestro Reglamento, *supra,* concluimos que procede ejercer nuestra discreción y expedir el auto de *certiorari,* por ser la etapa más propicia para la consideración de la controversia.

En el presente caso, como resultado de un proceso de divorcio, el Sr. Nieves Vargas y la Sra. Vélez Lucca llegaron a ciertos acuerdos que fueron aprobados e incluidos en la sentencia emitida por el tribunal. Entre ellas, estipularon que el Sr. Nieves Vargas le pagaría a la Sra. Vélez Lucca la cantidad de $25,000.00 por su participación sobre las mejoras realizadas a la propiedad privativa de éste. El pago del crédito de $25,000.00 a favor de la Sra. Vélez Lucca se realizaría en el término máximo de ocho (8) años, contados a partir de la fecha del divorcio. Dicho término máximo venció el 4 de noviembre de 2021.

El Sr. Nieves Vargas pagó $5,000.00 de dicha deuda. No obstante, éste incumplió con su obligación de pagar el balance pendiente de $20,000.00. Por ello, la Sra. Vélez Lucca exigió el cumplimiento de la estipulación pactada a través de la solicitud de ejecución de sentencia de divorcio.

En dicho procedimiento de ejecución de la sentencia de divorcio, el Sr. Nieves Vargas reclamó un crédito por el pago de las

---

[38] *Mgnt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 608 (2000).
[39] *Íd.,* págs. 607-608.

obligaciones que la Sra. Vélez Lucca asumió como parte de los acuerdos del divorcio. En específico, solicitó el rembolso del 50% de los gastos extraordinarios que él pagó mientras tuvo la custodia de los menores, así como de las mensualidades del préstamo del Yaris y la renta del espacio del *trailer*. El Sr. Nieves Vargas adujo que las partidas reclamadas sobrepasan el balance de $20,000.00 adeudado a la Sra. Vélez Lucca por concepto de las mejoras a la propiedad, razón por la cual procedía reconocerle una acción de ajuste dentro del procedimiento de ejecución de la sentencia de divorcio. El TPI no permitió que el Sr. Nieves Vargas presentara su reclamación de ajuste y rembolso dentro del proceso de ejecución de la sentencia de divorcio. En el recurso KLCE202300033, este foro apelativo intermedio entendió que el foro primario no abusó de su discreción al negarse a atender el reclamo de ajuste y reembolso del Sr. Nieves Vargas dentro del procedimiento de ejecución de la sentencia de divorcio. Es decir, estuvo de acuerdo con el TPI en que procedía un pleito independiente para dilucidar los créditos reclamados por el Sr. Nieves Vargas. Por otro lado, este Tribunal de Apelaciones decretó la paralización del trámite de ejecución de la sentencia y ordenó al TPI celebrar una vista evidenciaria para establecer, con base en la prueba que se presente, la cantidad que realmente adeuda el Sr. Nieves Vargas respecto a las cuantías reclamadas de costas, gastos, honorarios de abogado e intereses.

No obstante, en la vista celebrada, el TPI indicó que atendería la defensa de sentencia satisfecha presentada por el Sr. Nieves Vargas sobre el cual sustentó su reclamo de crédito. **En la referida vista no se presentó prueba, ni se discutió lo ordenado por el Tribunal de Apelaciones referente a las cuantías por concepto de costas, gastos, honorarios de abogado e intereses**. Consecuentemente, nada se adjudicó al respecto. Empero, desfilada la prueba de ambas partes, el foro primario ordenó al Sr. Nieves

Vargas a pagar a la Sra. Vélez Lucca los $20,000.00 de las mejoras a la propiedad privativa, más las costas, gastos y honorarios de abogados reclamados por ésta.

El juez del foro primario incumplió con el mandato de la sentencia emitida por este Tribunal de Apelaciones en el KLCE202300033, que resolvió que:

> … no abusó de su discreción el TPI al negarse a atender el reclamo de nivelación del peticionario en el procedimiento de ejecución de sentencia. De este modo, se evita complicar innecesariamente el trámite post sentencia ante nos y se brinda a las partes la oportunidad de litigar cabalmente sus reclamaciones disponiendo de los mecanismos que les provee un pleito independiente.

A su vez, la referida sentencia le ordenó al TPI celebrar una vista evidenciaria para establecer, con base en la prueba que se presentara, la cantidad que realmente adeuda el Sr. Nieves Vargas respecto a las cuantías reclamadas de costas, gastos, honorarios de abogado e intereses.

Ninguna de las partes solicitó al Tribunal Supremo la revisión de la sentencia emitida. Por tanto, dicha determinación se convirtió en final y firme y constituye la ley del caso. **Es decir, el reclamo de los créditos incoado por el Sr. Nieves Vargas tiene que tramitarse en un pleito independiente, en una sala de asuntos de lo civil.** Una vez incoado el nuevo pleito de cobro, el Sr. Nieves Vargas tendría a su disposición los remedios provisionales que provee la Regla 56 de Procedimiento Civil, 32 LPRA Ap. V, R. 56, en lo que se adjudica el pleito independiente.

En otro extremo, por no haberse cumplido con el mandato referente a la celebración de la vista evidenciaria, corresponde devolver el asunto al foro primario, quien deberá celebrar la vista ordenada, con el fin de establecer, con base en la prueba que se presente, la cantidad que realmente adeuda el Sr. Nieves Vargas respecto a las cuantías reclamadas de costas, gastos, honorarios de

abogado e intereses. **Cónsono con ello, se mantiene en efecto la paralización del trámite de ejecución de sentencia provisto en el recurso KLCE202300033.**

### IV.

Por las razones antes expuestas, expedimos el auto de *certiorari,* revocamos la resolución recurrida y devolvemos el caso para la continuación de los procedimientos, acorde con lo aquí resuelto.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones